UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI,
JACKSON DIVISION

UNITED STATES OF AMERICA

VERSUS                                              CRIMINAL NO. 3:08cr7-DCB-JCS

RICARDO SANDIFER                                                      DEFENDANT

## OPINION & ORDER

This matter comes before the Court on the defendant's Motion to Suppress [**docket entry no. 14**].  Having considered said Motion, memoranda in support and opposition thereto, testimony presented at the suppression hearing, all applicable law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

### I. BACKGROUND

On August 9, 2007, Ricardo Sandifer, defendant herein, was driving an automobile at the intersection of Mayes and Bailey Streets in Jackson, Mississippi, when he was stopped by Officer Barry Hale of the Jackson Police Department ("JPD") for a seatbelt violation.[1]  Officer Hale approached Sandifer and requested to see his driver's license.  After Sandifer produced a valid driver's license, Officer Hale asked Sandifer if he could conduct a brief search of the vehicle.  Sandifer refused.  Officer Hale then had

---

[1] Sandifer pulled off the street and into the parking lot of a service station next to gas pumps before stopping his car. (Suppr. Hrg. Tr. 4:14-15.)

his dispatcher search for outstanding warrants for Sandifer's arrest.  The dispatcher informed Officer Hale that two old warrants for Sandifer's arrest existed.  Upon learning of the outstanding warrants, Officer Hale placed Sandifer under arrest and secured Sandifer in the rear seat of his police car.

Officer Hale then began to inventory the contents of the vehicle Sandifer had been driving.  During the course of the inventory, Officer Hale discovered several baggies of a white powdery substance concealed inside the sagging headliner above the driver's-side sun visor.  Officer Hale also observed a white t-shirt protruding from the area between the backseat armrest and the trunk divider.  Upon removing the t-shirt, Officer Hale found a 9mm Ruger P-85 (serial #301-41430) loaded with a magazine of twelve live rounds.

On January 23, 2008, Sandifer was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) (2006) and for criminal forfeiture of the Ruger P-85 pursuant to 18 U.S.C. § 924(d)(1).  (Indict. 1.)

On June 27, 2008, Sandifer filed the instant Motion to Suppress [docket entry no. 14] in which he asks the Court to preclude the government from using the baggies of white powder and the firearm as evidence at trial because they are the fruit of Officer Hale's illegal search of the vehicle Sandifer was driving. In its Response [docket entry no. 15] to the defendant's Motion,

the United States contends that Officer Hale's search of the automobile was a valid inventory search. Alternatively, the government posits that Officer Hale properly conducted a search incident to Sandifer's lawful arrest.

On July 29, 2008, the Court held a hearing on the defendant's Motion to Suppress at which the United States elicited Officer Hale's testimony relevant to the subject stop, arrest, and search. Sandifer's attorney cross-examined Officer Hale at length. No other witnesses were called to testify at the suppression hearing.

On August 4, 2008, Sandifer submitted a Memorandum [docket entry no. 16] in support of his Motion to Suppress. Sandifer contends that Officer Hale did not conduct a legitimate inventory search of the vehicle. The defendant asserts that Officer Hale's sole motivation for the stop was to search the automobile and that he did not even consider releasing the car to someone else (instead of having the car impounded) even though he knew Sandifer lived only a few blocks away. In response, the United States maintains that the inventory search was valid because it was conducted pursuant to established JPD policies. The government also argues that Officer Hale's subjective motivations are irrelevant as long as he acted in accordance with what is objectively permissible under applicable law.

## II. ANALYSIS

"The fourth amendment proscribes only unreasonable searches

and seizures." United States v. Prescott, 599 F.2d 103, 105 (5th Cir. 1979). In order to be reasonable, a search must ordinarily be conducted pursuant to a warrant. Id. Therefore, whenever the government conducts a search without a warrant, it bears the burden of establishing the reasonableness of the search. United States v. Pearson, 448 F.2d 1207, 1211 (5th Cir. 1971); United States v. Edwards, 441 F.2d at 749, 753 (5th Cir. 1971).

### *A. Inventory Search*

"[I]nventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment. The policies behind the warrant requirement are not implicated in an inventory search, nor is the related concept of probable cause." Colorado v. Bertine, 479 U.S. 367, 371, 107 S. Ct. 738, 741, 93 L. Ed. 2d 739 (1987)(internal citations omitted). Inventory searches safeguard an owner's property while it is in police custody, insure against claims of lost, stolen, or vandalized property, and protect the police from danger. Id. at 372, 107 S. Ct. at 741.

As long as the police are conducting an inventory search pursuant to reasonable, standardized procedures and are not acting in bad faith or for the sole purpose of investigation, an inventory search satisfies the Fourth Amendment. Id. at 372-374, 107 S. Ct. at 741-42; accord United States v. Skillern, 947 F.2d 1268, 1275 (5th Cir. 1991). Standardized criteria and established routines prevent an inventory search from being "a ruse for a general

rummaging in order to discover incriminating evidence." <u>Florida v. Wells</u>, 495 U.S. 1, 4, 110 S. Ct 1632, 1635, 109 L. Ed. 2d (1990). However, "[t]here is no requirement that the prosecution submit evidence of written procedures for inventory searches; testimony regarding reliance on standardized procedures is sufficient, as is an officer's unrebutted testimony that he acted in accordance with standard inventory procedures." <u>United States v. Lage</u>, 183 F.3d 374, 380 (5th Cir. 1999).

In the present case, Officer Hale testified that JPD's policy is to take an inventory of valuables contained in vehicles which are to be impounded. (Suppr. Hrg. Tr. 8:1-10.) The defendant has not challenged Officer Hale's assertion that such a standardized policy exists. Accordingly, the Court finds that Officer Hale's search of the vehicle Sandifer was driving was conducted pursuant to a pre-existing, objective, and routine policy and was not a ruse for discovering incriminating evidence. Therefore, the inventory search satisfied the requirements of the Fourth Amendment and the evidence obtained thereby shall not be suppressed.

Sandifer points out that Officer Hale could have (but did not) consider releasing the car to someone else even though he knew that Sandifer's residence was nearby. However, there is no indication that Sandifer ever requested that the car be turned over to another person. Moreover, <u>Bertine</u> reiterated that the Fourth Amendment does not require police to give arrestees the option of making

5

alternative arrangements for the safekeeping of their property, even if such measures would be less-instrusive than impoundment. 479 U.S. 373, 107 S. Ct. 742; United States v. Skillern, 947 F.2d 1268, 1275-76 (5th Cir. 1991).  In addition, there is no evidence that Officer Hale deviated from JPD policy when he did not offer Sandifer an alternative to the vehicle's impoundment.

True enough, Officer Hale did testify that he possessed the discretion to permit another person to take custody of the vehicle. (Suppr. Hrg. Tr. 27:2-11.)  However, Officer Hale's decision to impound the vehicle was an eminently reasonable exercise of the community caretaking function, see United States v. Castro, 166 F.3d 728, 734 (5th Cir. 1999) (en banc) (per curiam), because there was no other person immediately available who could have taken custody of the car and it was not feasible for the car to be left parked in front of the service station's gas pumps.  (Suppr. Hrg. Tr. 7:23-24.)

Sandifer also argues that Officer Hale's testimony demonstrated that his entire motivation for pulling Sandifer over was for the purpose of searching the car, although he does not contend that Officer Hale lacked probable cause (or reasonable suspicion) for the stop.  Assuming arguendo that this was Officer Hale's secret intention, the Supreme Court of the United States has clearly held that a police officer's subjective motivations have no bearing upon the constitutional reasonableness of a traffic stop.

Whren v. United States, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996); accord Castro, 166 F.3d at 734; United States v. Causey, 834 F.2d 1179, 1184 (5th Cir. 1987) (en banc) ("so long as police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry.")  Therefore, Officer Hale's purpose for stopping Sandifer is irrelevant to the legality of the stop and subsequent impoundment and inventory search of the vehicle.

*B. Search Incident to Arrest*

A search incident to a valid custodial arrest is also an exception to the warrant requirement of the Fourth Amendment.  In Chimel v. California, 395 U.S. 752, 763, 89 S. Ct. 2034, 2040, 23 L. Ed. 2d 685 (1969), the Supreme Court of the United States developed the doctrine of search incident to arrest when it held that an officer making a lawful custodial arrest may search the person in custody as well as any area within his immediate control into which he might reach in order to obtain a weapon or to destroy evidence.  In New York v. Belton, 453 U.S. 454, 460, 101 S. Ct. 2860, 2864, 69 L. Ed. 2d 768 (1981), the Supreme Court held that once a police officer makes a lawful custodial arrest of an occupant or recent occupant of an automobile, the Fourth Amendment permits the officer to search the passenger compartment of the automobile as a contemporaneous incident of arrest.  In Thornton v.

United States, 541, U.S. 615, 617, 124 S. Ct. 2127, 2129, 158 L. Ed. 2d 905 (2004), the Supreme Court held that police may search the passenger compartment of a vehicle as a contemporaneous incident of the arrest of a recent occupant of the car even when the officer does not make contact with the arrestee until after he has left the vehicle.  In addition, "the police may also examine the contents of any containers found within the passenger compartment," whether they be open or closed.  Belton, 453 U.S. at 460, 101 S. Ct. at 2864.

Officer Hale testified that he began his search of the vehicle after he placed Sandifer under arrest and put him in the back of the police car. (Suppr. Hrg. Tr. 7:17-21.)  As mentioned, both the baggies of white powder and the firearm were found within the passenger compartment of the vehicle Sandifer had been driving. Therefore, under the authority of Belton and Thornton, the Court is of the opinion that the search conducted by Officer Hale was alternatively justified as a proper search incident to arrest. Accordingly, the evidence obtained thereby shall not be excluded.

### III. CONCLUSION

Based upon the foregoing analysis and authorities,

**IT IS HEREBY ORDERED** that the defendant's Motion to Suppress [**docket entry no. 14**] is **DENIED**.

**SO ORDERED**, this the 11th day of August 2008.

                                        s/ David Bramlette

              **UNITED STATES DISTRICT JUDGE**